RUTLAND,<br>
January,<br>
1838.<br>
<br>
Leach<br>
v.<br>
Cook, trustee<br>
of Wheeler &<br>
Swallow.

---

CONGREGATIONAL SOCIETY OF POULTNEY *v.* ELISHA ASHLEY, HIRAM WOOD and SETH PATTEE.

RUTLAND,<br>
January,<br>
1838.

A corporation, especially an eleemosynary corporation, cannot be assessed and set in the list and taxed for money on hand or debts due to it.

THIS was an action on the case against the defendants, as listers of the town of Poultney, for setting in the list of said town the money of the plaintiffs, by reason of which the plaintiffs were taxed and their property distrained and sold in payment of such tax. Plea—Not guilty and issue to the Court.

This case was tried in the County Court, upon the following statement of facts :—

" It is agreed by the parties in this case, that in the
" year 1835, the defendants were listers in and for the town
" of Poultney, and that said society, during said year, and
" ever since hath been a body politic and corporate for the
" purpose of supporting the preaching of the gospel, and of
" building and repairing a meeting-house ; that said Society,
" for said purpose, possessed, during said year, three thou-
" sand dollars in donations, of which they have the right
" only to appropriate the usufruct or interest for the purposes
" aforesaid ; That during said year said society, by their treas-
" urer, let out said sum of three thousand dollars for the pur-
" pose aforesaid, and that the defendants, as listers, as afore-

Rutland,
January,
1838.

Cong. Soc.
Poultney
v.
Ashley *et al.*

" said, inserted said three thousand dollars in the general list
" of said town, and assessed said society said sum of money
" at interest, and thereof duly notified the treasurer of said
" society, and on the 25th day of August, 1835, returned and
" delivered said list to the town clerk of Poultney ; and that af-
" terwards, during said year, the selectmen of said Poultney
" made out a rate-bill and assessed a state school tax upon
" said list and inserted the same in said rate-bill, amounting
" to $10,80, and delivered said rate-bill together with a war-
" rant to Harlow Hosford, the legal collector of said town, to
" enforce the collection of said tax ; and that the said Hos-
" ford, as such collector, levied such warrant on the 15th
" day of July, 1837, upon nine bunches of shingles, the prop-
" erty of said society, of the value of $16,00 and sold the
" same."

The County Court rendered judgment for the plaintiffs,
and the defendants excepted.

*Merrill & Ormsbee,* for defendants.

It is contrary to the settled policy of the law to exonerate
property like that in question from taxation.

If ten individuals belonging to said corporation had each a
thousand dollars in money, and debts due, it is clear that
they would be liable to pay taxes thereon.   Would it be con-
sistent with good policy to suffer such individuals to evade
the operation of our taxing laws, by making a common fund
of their $10,000 and giving it to a society ?

But the plaintiffs insist that the law, in relation to the tax-
ing of money on hand and debts due, makes a provision,
whereby the person assessed may avail himself of his oath to
prevent unjust assessment, and that this provision cannot be
applied to a corporation aggregate.

There is an obvious difficulty in giving to a corporation,
literally, the benefit of this provision, but we insist that the
agent of the corporation, whose business is to manage the
fund, could, consistently with the spirit of the law, avail him-
self of the provision.

Money on hand and debts due have been taxed from the
origin of our government, and is probably the last kind of
property that the legislature would understandingly exempt
from taxation.

*J. S. Harris*, for plaintiffs.

Bodies politic and corporate are not named in the acts regulating the grand list. It is a general principle, that a statute requiring or authorising a person to do certain acts, which natural persons alone can perform, cannot extend to a corporation. 1 Black. Com. 476, 7.

The statute prescribes and implies personal duties and privileges, incident only to natural persons, and which cannot be performed by a body corporate, unless it has the power at common law, or by the acts of its incorporation.

No person, either officer or agent, is empowered or required, by statute, to exhibit the list or statement of moneys on hand or due, &c., belonging to the corporation, to the listers.

In case the listers omit to notify the inhabitants to exhibit their lists, the statute requires the listers to make personal demand of the list. There are none of whom the demand can be made, and none to comply with it.

The statute provides that the listers shall give notice of the assessments, in certain cases, either verbally, or by placing in his, her, or their hands, or by leaving at the last and usual place of abode of such person or persons so assessed, a written notice, &c. No person is authorised, by law, to receive such notice for the congregational society of Poultney.

When any person shall think himself assessed in a greater sum than is just and reasonable, the remedy is a disclosure on oath, and this remedy is expressly given to all persons liable to the tax. But a corporation cannot take an oath, or perform any personal duties. 1 Blac. Com. 477. *Bradley v. the town of Richmond, Trustee of A. B. Cooper*, 6 Vt. R. 121.

The opinion of the Court was delivered by

COLLAMER, J.—The plaintiffs are possessed of a fund, derived from donations, amounting to three thousand dollars, of which they have only the usufruct. This sum the defendants, being listers, put to the plaintiffs in the list, whereby the plaintiffs were compelled to pay taxes, and to recover which this action is brought. The plaintiffs are a corporation, duly organized, for the purpose of sustaining public worship and religious instruction, in Poultney; and the question is this, are the money, debts or funds of such a corporation subject to taxation, by the statute of 1825,

RUTLAND,
*January*,
1838.

Cong. Soc.
Poultney
*v.*
Ashley *et al*

Rutland,
January,
1838.

Cong. Society
Poultney
v.
Ashley et al.

commonly called the listing law ?    By the constitution of this state, (Chap. 2. sec. 41.) it is provided that "all religious societies or bodies of men, that may be hereafter united or incorporated, for the advancement af religion and learning, or for other pious and charitable purposes, shall be *encour-aged* and *protected*, in the enjoyment of the privileges, immunities and estates which they, in justice, ought to enjoy." It is under this constitution that the plaintiffs, and the multitude of other eleemosynary corporations, exist in this state. They are institutions entirely of a different character from mere pecuniary corporations for private emolument.   In relation to the latter, the shares are holden as private property, and, as such, are subject to taxation.   Among the many eleemosynary corporations, private and municipal, are religious societies, of all denominations of christians, academies, charity schools, medical institutions, social library societies, lyceums, asylum for the insane and colleges.   Most of these have some lands, and some pecuniary funds, of more or less extent; but all short of their wants.   These funds have, in some instances, been partly contributed by the state, and all have grown up by legislative encouragement and enactment. The money has been chiefly collected from the benevolence of individuals, from the bounties and legacies of the wealthy, down to the contribution of "the widow's mite."   Commenced by our fathers, they have been multiplied and enlarged by ourselves.    Incorporated and encouraged by legislative sanction, they have contributed extensively to religion, benevolence and learning, and have elevated our condition, and given character to us, as a people.   The question now is, did the legislature, in 1825, disregard the direction in the constitution, and forget the feelings and the interests of the people, and proceed, instead of fostering and encouraging, to tax and levy public contributions and exactions[q] on the scanty funds of all those institutions ?   For, if of one, then of all.   Did they intend that the money, which has been contributed by the patrons of our colleges, and other institutions of learning, instead of receiving aid from the state, should pay contribution *to* the state ?   Did they intend that the money, so generously bestowed, by a benevolent lady, for an asylum for the insane, in the county of Windham, and the few thousands which the legislature ad-

ded for that object, should actually, so far as it remains in funds, go into the list and be subject to taxation, to sustain the town expenses of Brattleboro? When consequences like these are involved, we must have the most clear and explicit expressions of the statute. It must not be the result of doubtful construction or a conclusion deduced from the balancing of probabilities. Bearing these suggestions in mind, let us proceed to examine the statute of 1825.

RUTLAND,
*January.*
1838.

Cong. Society
Poultney
*v.*
Ashley *et al.*

The statute entitled " an act ascertaining the principles on which the list of this state shall be made, and directing listers in their office and duty," in relation to real estate, expressly provides, (sec. 2.) that " all lands in this state, sequestered and improved for schools and *other public, pious and charitable uses,* shall be exempt from taxation, and shall not be set in the list." Here it is obvious, the legislature was following out the direction in the constitution, by exempting the lands, the most valuable funds of these corporations, from all taxation. It would be most extraordinary, if, in the same statute, we should find them taxing their little modicum of cash funds. The fifth section contains what relates to money or debts due. It provides, " that if any *person* or *persons* in this state shall have money on hand," &c., " it shall be set in the list, in the town where such *person resides.*" It provides, that if any person or persons, shall fail to put into their list, their money or debts, then the listers may insert it. It further provides, (sec. 13.) that when any person or persons shall think they are assessed too much for money, they may apply to the selectmen and make a disclosure on oath, by which the list must be made. The form of that oath is given by law, and has undergone some change ; but now is thus :

" You, A. B. do solemnly swear, that you will make a true and faithful disclosure of all bank and insurance stock, all moneys on hand, or debts due," &c.,—"over and above what was then due from you, according to your best knowledge and judgment."

Now, the whole language of these provisions is clearly applicable only to *natural persons* and the whole machinery is entirely *personal,* wholly unadapted and incapable of practical application, to a corporation aggregate. First, the statute says, " if any *person* or *persons,* shall have money, it

RUTLAND,
January,
1838.

Cong. Society
Poultney
v.
Ashley et al.

shall be put in the list of the town where he *resides*." Corporations have no residence. Secondly, if the person is over-assessed he is to make disclosure *on oath.* This cannot be done by a corporation. Third, the form of the oath is exclusively personal, and utterly incapable of application to a corporation. So far then from this statute showing any clearly expressed intention of the legislature to tax these funds, we think it clearly otherwise. These are public funds, in some measure, administered by these corporations, as almoners of the public bounty ; and to levy public exactions upon them, is a kind of political paradox. To involve the legislature in all this, by giving a construction to provisions so ill assorted, and adapted as these, for such a purpose, would be altogether unreasonable.

Judgment affirmed.